FILED
RICHARD W. NAGEL
CLERK OF COURT

2019 MAR 12 PM 2: 17

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
CINCINNATI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER **513-276-0751** | Case No. **1:19MJ-170**<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Tyler D. Field, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.    I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **513-276-0751**, (the "**SUBJECT TELEPHONE** "), whose service provider is Sprint, a wireless telephone service provider headquartered at 6480 Sprint Parkway, Overland Park, Kansas.. The **SUBJECT TELEPHONE** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.    Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3123(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3.    I am a Special Agent (SA) of the Drug Enforcement Administration (DEA) and have been so employed since March 2016. I also serve as a U.S. Army Military Police Major in

the Indiana Army National Guard and have done so for over sixteen years. Prior to being employed with the DEA, I was employed as a police officer for the Town of Bridgewater, Massachusetts for over three years. I graduated from the U.S. Army Military Police School, Plymouth Police Academy, and DEA Basic Agent Academy. During those courses I received training in the investigation of offenses involving controlled substances. As a Special Agent of the DEA, my duties and responsibilities include conducting criminal investigations for violations of federal law, particularly those found in Title 21 and Title 18 of the United States Code. As a DEA agent, I have participated in approximately fifteen criminal investigations seeking evidence of violations of the Federal Controlled Substances Act (Title 21, of the United States Code).

4.     I am currently assigned to the Cincinnati Resident Office of the DEA. I received specialized training from the DEA, including the 18-week Basic Agent Training course. That training focused on methods of unlawful drug trafficking; the identification of controlled substances; surveillance; undercover operations; confidential source management; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations.

5.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 United States Code, Sections 841 and 846 have been committed, are being

2

committed, and will be committed by Styles HUMMONS, David KEMP, and other as-yet known and unknown individuals. I believe there is probable cause that the **SUBJECT TELEPHONE** is being used in furtherance of the aforementioned crimes and that there is also probable cause to believe that the location of the **SUBJECT TELEPHONE** will constitute evidence of those criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

7.      The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

### PROBABLE CAUSE

8.      During the fall of 2018, Cincinnati Police Department Narcotics Unit Investigators became involved in the investigation of Styles HUMMONS. The focus of the investigation was his continued involvement in crimes of violence and his involvement in the illegal sale of controlled substances. Information obtained from a Confidential Source[1] (hereinafter referred to as "CS# 1") indicated that HUMMONS was involved in the distribution of controlled substances as well as other crimes of violence. Specifically, investigators learned that Styles HUMMONS utilized phone: (513) 693-2339 to facilitate his illegal drug sales and to communicate with others involved in the crimes of violence.

---

[1] The CS has been convicted of felony violations involving controlled substances in the past and is cooperating in exchange for monetary payments. The CS has participated in law enforcement operations where narcotics, firearms and illegally earned assets were recovered. The information provided by the CS was independently corroborated and was determined to be reliable.

9.     In December, 2018, I met with a Cincinnati Police Department confidential source (CS# 2[2]) who told me that CS# 2 could purchase ounce quantities of fentanyl from KEMP for approximately $2,600 per ounce. CS# 2 said that during December 2018, KEMP provided CS# 2 with approximately a gram of suspected fentanyl[3] as a "tester." CS# 2 said that KEMP told CS# 2 that it was fentanyl. KEMP also told CS# 2 that KEMP currently had kilogram quantities of fentanyl. CS# 2 described the fentanyl as white with a yellow tint. CS# 2 stated that KEMP currently uses multiple telephone numbers, to include **513-276-0751** (the **SUBJECT TELEPHONE**.)

10.    From October 17, 2018, to January 4, 2019, investigators conducted approximately seven controlled purchases of heroin/fentanyl from Styles HUMMONS. During these controlled purchases, and at the direction of law enforcement, CS# 1 placed numerous recorded telephone calls to Styles HUMMONS, using phone: (513) 693-2339. During those telephone conversations, Styles HUMMONS directed CS# 1 to various locations where he would complete the narcotics purchases with CS# 1. CS# 1 was under the direction and surveillance of law enforcement during these controlled purchases. According to the Hamilton County Crime Laboratory, the drugs purchased contained a combination or mixture of heroin, fentanyl, tramadol and acetyl fentanyl.

---

[2] CS# 2 has been previously charged with a felony drug-trafficking violation and is cooperating for monetary payment. CS# 2 has previously been able to provide information that has been independently corroborated by law enforcement officers and your affiant considers CS# 2 reliable.

[3] CS# 2 was not expecting KEMP to give CS# 2 fentanyl during their encounter. Unsure of what to do with the fentanyl, CS# 2 discarded the fentanyl. As a result, investigators were not able to submit the suspected fentanyl for analysis.

4

11.     Investigators executed multiple, court-authorized orders as to Styles HUMMONS phone: (513) 693-2339. Through the court orders, investigators obtained account subscriber information, call history and cellular device location information.

12.     Investigators reviewed Styles HUMMONS' cellular communications records for phone: (513) 693-2339 and determined HUMMONS stopped using this number on or around January 27, 2019. Investigators analyzed cellular records from the most common numbers communicating with phone: (513) 693-2339 and identified the most common numbers began communicating with phone: (513) 354-9791 on January 27 through February 3, 2019. Investigators obtained cellular records for phone: (513) 354-9791 and identified numerous commonalities between Styles HUMMONS' previous cellular number (513) 693-2339 and cellular number (513) 354-9791, leading investigators to believe HUMMONS is now operating phone: (513) 354-9791.

13.     Investigators executed a court-authorized order as to phone: (513) 354-9791 and obtained account subscriber information, call history and cellular device location information.

14.     On February 6 and February 7, 2019, investigators conducted physical surveillance of HUMMONS in conjunction with location information collected from phone: (513) 354-9791. Investigators were able to determine the cellular device was present with HUMMONS at multiple locations. Through surveillance and call history analysis investigators concluded that HUMMONS utilizes phone: (513) 354-9791.

15.     On March 11, 2019, I reviewed call records for the **SUBJECT TELEPHONE**. According to call records, there were approximately six communications between the **SUBJECT TELEPHONE** and HUMMONS' telephone number (513) 354-9791 between February 3, 2019 and February 12, 2019. Based on my knowledge that investigators have conducted multiple

controlled purchases from HUMMONS, my knowledge that investigators have concluded that telephone number (513) 354-9791 is utilized by HUMMONS, CS# 2's statements that KEMP is a source of supply for heroin/fentanyl, and CS# 2's statements that KEMP utilizes the **SUBJECT TELEPHONE**, I believe that the communications between HUMMONS, using (513) 354-9791, and KEMP, using the **SUBJECT TELEPHONE**, were in furtherance of their drug trafficking activities.

16.     Based on the information set forth in this affidavit, I believe that there is probable cause to believe that **SUBJECT TELEPHONE** is utilized in ongoing criminal activity, specifically in violation of Title 21 U.S.C. §§ 841 and 846. I believe there is probable cause that locating the general geographical position and movements of **SUBJECT TELEPHONE** will assist law enforcement in identifying, dismantling and disrupting HUMMONS' and KEMP's illegal drug dealing activities.

17.     In my training and experience, I have learned that Sprint is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  [Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These

6

towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

18.     Based on my training and experience, I know that Sprint can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Sprint's network or with such other reference points as may be reasonably available.

19.     Based on my training and experience, I know that Sprint can collect cell-site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as Sprint typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

20.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

21.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable

cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

22.     I further request that the Court direct Sprint to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Sprint. I also request that the Court direct Sprint to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the Target Cell Phone on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

23.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

24.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____

Tyler D. Field
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on this  1 2  day of March 2019

_____

Honorable Stephanie K. Bowman
United States Magistrate Judge

9

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **513-276-0751**, whose wireless service provider is Sprint, a wireless telephone service provider headquartered at 6480 Sprint Parkway, Overland Park, Kansas.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of Sprint, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

**ATTACHMENT B**

**Particular Things to be Seized**

### I. Information to be Disclosed by the Provider

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Sprint, Sprint is required to disclose the Location Information to the government. In addition, Sprint must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the Target Cell Phone on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

### II. Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 21 U.S.C. § 841(a)(1) and 846 involving Styles HUMMONS, David KEMP and other as yet unidentified subjects.